UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


THOMAS L. MATJE,

             Plaintiff,                              No. 13-14791

v.                                                   District Judge Matthew F. Leitman
                                                     Magistrate Judge R. Steven Whalen

MR. ZESTOS, Medical Director,
ET AL.,

             Defendants.
_____ /

## REPORT AND RECOMMENDATION

On November 20, 2013, Plaintiff Thomas L. Matje, an inmate in the custody of the

Federal Bureau of Prisons, filed a *pro se* civil complaint pursuant to *Bivens v. Six*

*Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), alleging deliberate indifference to

his medical needs, in violation of the Eighth Amendment. On April 24, 2014, by leave of

the Court, he filed an amendment that incorporated the original complaint but added a

request for injunctive relief [Doc. #17]. Before the Court at this time is a motion for

summary judgment  [Doc. #40] filed by Defendants William Malatinsky, M.D. and James

Zestos, and a motion for summary judgment filed by Plaintiff [Doc. #42], which have

been referred for Reports and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(b).

For the reasons discussed below, I recommend that the Plaintiff's motion [Doc. #42] be

DENIED, and that Defendants' motion [Doc. #40] be GRANTED, dismissing Defendants

Malatinsky and Zestos with prejudice.


-1-

## I.   FACTS

In his complaint [Doc. #1], Plaintiff alleges that the Defendants "were all involved in the decision making process concerning Plaintiff's medical care and the medication prescribed him as part of that care.  Medications which Plaintiff was taking on the street before his incarceration were stopped by these individuals and Plaintiff now suffers from the harm done as a result of their actions." *Complaint*, § III, Statement of Facts.

In a Brief in Support appended to his Complaint, Plaintiff states that he suffers pain as a result of various medical conditions, including back and leg pain stemming from lumbar radiculopathy, and that before he was incarcerated, he was prescribed Oxycodone. He states that in response to his grievance regarding his treatment, he was told that Oxycodone "was not medically indicated." The grievance response, appended to the complaint at Pg. ID 24, states that Plaintiff is receiving Gabapentin 300 mg, three times a day, for pain, and that Oxycodone is not medically indicated. Nevertheless, Plaintiff alleges that without Oxycodone, the effectiveness of his other medications is reduced, causing "further pain and suffering." *Brief in Support of Complaint*, at 4.  Plaintiff alleges that "his level of care did not rise to the same level of care as community standards and were, in fact, contrary to those standards...." *Id*. at 2.

On February 28, 2015, I filed a Report and Recommendation [Doc. #24] recommending that Defendants' motion to dismiss [Doc. #20] be granted. The Court accepted the recommendation to the extent of dismissing Plaintiff's Eighth Amendment deliberate indifference claims based on (1) the failure to specifically prescribe Oxycodone, and (2) the medical providers' failure to adhere to accepted community medical treatment standards. However, the Court denied Defendants' motion to dismiss Plaintiff's claim that he received *no* treatment for his complaints of pain.

-2-

Discovery therefore  went forward on Plaintiff's remaining claim that he did not receive treatment for his pain. Plaintiff entered FCI Milan on January 4, 2013. Attached to Defendants' motion as Exhibit C are portions of Plaintiff's medical records from Milan. The records show the following:

-On February 13, 2013, Plaintiff demanded Oxycodone.

-On March 5, 2013, Plaintiff was prescribed Ibuprofen 800 mg., two times per day.

-On March 11, 2013, Plaintiff's spine was x-rayed. The results showed mild degenerative disc disease.

-On March 25, 2013, Plaintiff's right shoulder was x-rayed.

-On April 15, 2013, Plaintiff requested Oxycodone and Gabapentin, opining that the Gabapentin was ineffective by itself (indicating that Gabapentin had been previously prescribed).

-On April 24, 2013, Plaintiff requested Oxycodone for pain control. He was prescribed Ibuprofen 800 mg., three times per day and Gabapentin 300 mg., three time per day for pain.

-On May 21, 2013, Plaintiff said that the Elavil was helping. The dosage was set at 50 mg. at bedtime, for six months duration,  "for pain." He was also prescribed 600 mg Gabapentin, three time per day, and Trazodone, 50 mg.

-On June 3, 2013, Plaintiff requested a lower dose of Elavil (Amytriptyline), and the prescription was reduced to  25 mg. orally at bedtime, for a six month period.

-On July 18, 2013, Plaintiff was prescribed Ibuprofen 800 mg, three times per day. He was also counseled on exercise and compliance with treatment.

-On August 15, 2013, Plaintiff stated that he wanted Vicodin for pain control.

-On August 16, 2013, Plaintiff underwent a CT scan of the lumbar spine, showing

-3-

2:13-cv-14791-MFL-RSW   Doc # 53   Filed 02/13/17   Pg 4 of 11   Pg ID 399

broad-based bulging.

-On August 21, 2013, Plaintiff stated he was "doing ok," but that he had to stop taking Gabepentin and Elavil because it made him tired.

-On September 23, 2013, Plaintiff was prescribed Acetaminophen, 650 mg., three times per day. He was also provided with patient education counseling, after which he "verbalized understanding."

-On November 13, 2013, Plaintiff was seen by Dr. Malatinsky. Plaintiff said he was "willing to try Lyrica after explanation of what it was."

-On December 9, 2013, Plaintiff received an epidural steroid injection.

-On April 7, 2014, Plaintiff received a lumbar epidural steroid injection.

-On May 7, 2014, Dr. Malatinsky reported that Plaintiff's "symptoms seem out of proportion to physical findings." Plaintiff said that the only thing he wanted for pain control was narcotics.

-On October 19, 2014, Plaintiff said he was "doing ok," and was taking his medication regularly without problems.

-On October 26, 2015, Plaintiff underwent an MRI of the lumbar spine.

-On December 22, 2014, Plaintiff received a lumbar epidural steroid injection.

-On October 5, 2015, Plaintiff was prescribed Venlaxafine, 150 mg, once daily.

Attached to Defendants' motion as Exhibit D is the declaration of Dr. Malatinsky, who states that he was the physician in charge of Plaintiff's care at Milan. He states that he denied Plaintiff's requests for Oxycodone "because I did not and do not believe it is medically indicated." Dr. Malatinsky also said that Plaintiff exhibited drug-seeking behavior, and that his presentence report revealed a history of drug addiction. In terms of the non-narcotic drugs that he prescribed, Dr. Malatinsky stated, at ¶ 7 of his Declaration:

"I did offer and provide a variety of non-narcotic medications and modalities for Mr. Majte's pain, including Gabapentin, Ibuprofen, Elavil, Tylenol, Lyrica, and Effexor.  While some of these drugs have other uses as well, I prescribed all of them with the intention that they relieve Mr. Matje's reported pain."

Dr. Malatinsky also noted at ¶ 8 that Plaintiff had received multiple steroid injections at the Pain Clinic at St. Joseph Hospital in Ann Arbor, and that none of the doctors there had recommended that narcotic medications would be appropriate.

In support of his claim of deliberate indifference, Plaintiff cites an August, 2012 letter from his free-world physician, Dr. Gage, from DeForest Windsor Family Practice in Windsor, Ontario. Dr. Gage's letter is appended to Plaintiff's complaint. He summarizes Plaintiff's history of rotator cuff surgery and lumbar disk disease with bulging disks, causing chronic pain. Dr. Gage states, "He requires pain medication to make the pain tolerable, and may require additional surgery in the future to correct this problem." Dr. Gage then lists Plaintiff's current medications, which include Ibuprofen 800 mg, Trazodone, and Oxycodone.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

-5-

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff."  *Anderson*, 477 U.S. at 252 (emphasis added).  If the non-moving party cannot meet that burden, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

#### A.   Eighth Amendment

Prisoners have a constitutional right to medical care under the Eighth Amendment,. *Estelle v. Gamble,* 429 U.S. 97, 103 (1976).  Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is

'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

In denying Defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(6), this Court noted that Plaintiff claimed that he received *no* medication for his intractable claim, thereby stating a plausible claim of deliberate indifference. The Court also commented that "Plaintiff may well have a difficult time prevailing on his claim," and that "Defendants may, upon a proper showing, ultimately be entitled to summary judgment on this claim." In their motion for summary judgment, Plaintiffs have made that showing.

The record plainly contradicts Plaintiff's claim that he received *no* treatment for his pain. His medical records show that Dr. Maltinsky did not prescribe Oxycodone, the narcotic medication that Plaintiff preferred, and that he was prescribed before he was incarcerated. But from the time he arrived at Milan, he was given a number of medications directed at alleviating his pain, including Gabapentin, Ibuprofen, Elavil, Effexor, and Lyrica. In May of 2013, Plaintiff stated that the Elavil was helping. While Plaintiff disputes that psychotropic drugs such as Gabapentin are effective for pain, Dr. Malatinsky states that the "off label" use of such drugs is indicated for pain, and that he prescribed these medications for the purpose of pain control. Plaintiff was also given lumbar epidural steroid injections.

Even if Dr. Malatinsky was negligent in declining to prescribe a narcotic pain medication, medical malpractice does not rise to the level of an Eighth Amendment violation. *See Estelle v. Gamble, supra*, 429 U.S. at 105-106 ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a

valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"). The Sixth Circuit has also observed that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas,* 537 F.2d 857, 860 at n. 5 (6th Cir.1976). To make out a claim of deliberate indifference, a plaintiff must show that his or her treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). A "difference of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do[es] not state an Eighth Amendment claim." *Smith v. Sator,* 102 F. App'x 907, 909 (6th Cir.2004) (citing *Estelle,* 429 U.S. at 107).

Plaintiff meets the objective prong of a deliberate indifference claim in that he has a sufficiently serious medical condition. Indeed, as shown in the attachments to his complaint, he received a Social Security Disability award as the result of his condition. However, his case falters on the subjective prong. He has shown nothing more than his disagreement with Dr. Maltinsky's course of treatment. Moreover, the fact that Plaintiff's former doctor may have prescribed Oxycodone is irrelevant. The issue is not whether Dr. Malatinsky disagreed with Dr. Gage, or whether Dr. Gage's approach was better, a determination this Court is ill-equipped to make. Nor is the issue whether the treatment the Plaintiff received at Milan was the most effective treatment available. Rather, the issue is whether Dr. Malatinsky was deliberately indifferent to Plaintiff's pain to the extent that he provided no treatment at all. He was not.

The evidence shows clearly that Dr. Malatinsky exercised medical judgment and

-8-

that Plaintiff received continuous treatment for his pain, including a variety of non-narcotic drugs such as Gabapentin  (Neurontin) and Lyrica. Dr. Malatinsky made a determination that Oxycodone was "not medically indicated." That Plaintiff disagrees with that determination is beside the point.   "[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable, *Harrison v. Barkley,* 219 F.3d 132, 138–140 (2d Cir.2000), and "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *Spruill v. Gillis,* 372 F.3d 218, 235 (3d Cir.2004) (citations omitted). *See also Perkins v. Kan. Dep't of Corr.,* 165 F.3d 803, 811 (10th Cir.1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.")

Given these facts, no reasonable trier of fact could find in Plaintiff's favor on his Eighth Amendment claim. Defendants are entitled to summary judgment.

### B.    Qualified Immunity

The Defendants also assert the defense of qualified immunity. Qualified immunity is an affirmative defense.  A government official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194 (2001). Under  *Saucier*, the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation.  However, in *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that the two-step sequential analysis set forth in *Saucier*  is no longer mandatory.   Rather, *Pearson* commended the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis. *Id*. at 236.

I have determined, as discussed above, that Defendants have shown an entitlement to summary judgment. As there was no constitutional violation, the first prong of *Saucier* has been satisfied. Defendants are also entitled to qualified immunity.

### C. Plaintiff's Summary Judgment Motion

For the same reasons that Defendants should be granted summary judgment, Plaintiff's motion for summary judgment [Doc. #42] should be denied.

## IV. CONCLUSION

I recommend that Defendants' motion for summary judgment [Doc. #40] be GRANTED, and that the claims against Defendants Malatinsky and Zestos be DISMISSED WITH PREJUDICE.

I further recommend that Plaintiff's motion for summary judgment [Doc. #42] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: February 13, 2017

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 13, 2017, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager